Argued and submitted March 1, reversed and remanded August 1, petition for review denied December 12, 2007 (343 Or 555)

## MEC LEASING, LLC,
a limited liability company,
*Plaintiff-Appellant,*

*v.*

## David JARRETT,
dba Mountain View Golf Club,
*Defendant-Respondent.*

Clackamas County Circuit Court
LV05050303; A131753

164 P3d 344

Bradford H. Lamb argued the cause for appellant. With him on the briefs was Zarosinski & Hill LLP.

Angela M. Stewart argued the cause for respondent. With her on the brief was Law Offices Robert S. Dorband Managing Attorney.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Carson, Senior Judge.

EDMONDS, P. J.

### EDMONDS, P. J.

Plaintiff appeals from the grant of summary judgment to defendant regarding plaintiff's claims of negligence, in which it alleged damage to four vehicles struck by golf balls hit from defendant's golf course. The vehicles were parked on property immediately adjacent to the golf course.[1] Plaintiff argues that the trial court erred in granting summary judgment to defendant because genuine issues of material fact exist that should be resolved by a jury. ORCP 47 C. We reverse and remand.

Defendant manages a golf course in Clackamas County. Plaintiff filed a complaint against defendant, alleging that four vehicles parked on property next to the course had been damaged by four golf balls from the course. The complaint alleged that defendant was aware that an

"ultra hazardous and abnormally dangerous condition existed on the 15th tee and fairway * * * that was caused by players hitting errant golf balls from said 15th tee and fairway that traveled outside the limits of the Golf Course onto the adjacent Trust Property thereby threatening bodily injury to persons and damage to property thereon."

Plaintiff also alleged that defendant

"has a duty to maintain the Golf Course under all attendant circumstances in a reasonably safe condition and to take reasonable precautions to protect persons and property on adjacent property from injury or damage, when Defendant knew or should have known that golf balls driven by patron players from the 15th tee and fairway of his Golf Course frequently travel outside the limits of the Golf Course premises onto the adjacent Trust Property, thereby threatening persons and property thereon to bodily harm and damage."

Plaintiff also alleged that, although defendant was notified in July 2004 of the condition of the 15th tee and fairway, defendant "failed to take responsibility for or any action to abate or alleviate the said ultra hazardous and abnormally dangerous condition" and that defendant was negligent because

---

[1] The property is owned by the Cheryl F. Meinig Trust. Cheryl Meinig and Michael Meinig reside in a home on the trust property.

"(a)   Defendant failed to supervise and control players using said 15th tee and fairway so as to preclude such players from hitting errant golf balls outside the limits of the Golf Course onto the Trust Property and cause damage to property thereon.

"(b)   Defendant failed to warn persons on the adjacent Trust Property of the inherent danger of errant golf balls being driven by players on the 15th tee and fairway of the Golf Course outside the limits of the Golf Course onto the adjacent Trust Property threatening injury to persons and damage to property on the Trust Property.

"(c)   Defendant permitted players on the 15th tee and fairway of his Golf Course to hit golf balls outside the limits of the Golf Course onto the adjacent Trust Property and cause damage to property located thereon.

"(d)   Defendant failed to erect or install any protective fencing or other devices to preclude divergent golf balls from leaving the limits of the Golf Course and travel onto the adjacent Trust Property and cause damage to property thereon."

Defendant moved for summary judgment, arguing that he was not the proper defendant[2] and that plaintiff had failed to state ultimate facts sufficient to support a claim for relief. Defendant submitted an affidavit averring that the golf course had been in operation since 1964 and that "[t]here have been no material changes to the layout of the 15th hole of the golf course since the Trust purchased [its] property" and that "[t]here is no way to travel by land to [trust] property without passing by the golf course." Defendant also submitted an affidavit from one of his attorneys, which included copies of the deed for the trust property dated March 24, 2004, the trust's application for a permit to build a single family home on the trust property, and records related to the ownership of the golf course. In his motion for summary judgment, defendant argued that

"[p]laintiff is not a neighbor, nor an invitee, licensees [sic], or even trespassees [sic] on property owned by [defendant]. Instead, it and the companies who have allegedly assigned

---

[2] The trial court denied the motion with regard to that claim and found that defendant is the proper party. Defendant does not challenge that ruling on appeal.

their claims to it, are apparent invitees of an owner of a neighboring property. As a result, the golf course owes no duty to protect plaintiff from damage or harm.

"Additionally, for the most part, plaintiff has not alleged conduct by [defendant] * * *. Instead, it alleged conduct by golfers using the public golf course in hitting stray golf balls onto property owned by a third party. There is no allegation that these golfers intended to hit the balls onto the third party's property, to harm plaintiff's vehicles, or that they were even negligent in so doing. Even if these allegations had been made, plaintiff fails to allege any reason why [defendant] * * * should be liable for the actions of third parties over whom it had not [sic] duty or ability to control."

Defendant also asserted that "[t]here have been no material changes to the layout of hole number 15 at any time during the Trust's ownership of the property"; "[t]he existence and nature of the golf course and the activities carried on at the golf course is open and obvious. One cannot travel to the Trust's property without passing by the golf course"; and "plaintiff cannot establish that [defendant] had any obligation to construct fencing to protect invitees, trespassers or guests of a neighboring property, particularly a neighbor who moved to the site after the golf course had operated for more than 40 years at the site."

In response to defendant's motion for summary judgment, plaintiff submitted an affidavit by its manager, Michael Meinig. Meinig stated that he and Keith Jackson, a neighboring property owner, went to the golf course in July 2004, to complain about the frequent golf balls coming from the course:

"At that meeting with [defendant], I told [defendant] about the frequent number of golf balls that were being struck from golfer[s] playing on the 15th tee and fairway that traveled outside the golf course boundary onto Plaintiff's property, and that they created an ultrahazardous and dangerous activity that threatened injury to persons and damage to property. I also advised [defendant] that I had observed many golfers playing that golf hole climb over the fence located between the golf course and Plaintiff's property and trespass upon Plaintiff's property in efforts to retrieve errantly struck golf balls. Defendant * * * responded to my statements to him by stating to me that he

did not have any responsibility or liability for the golfers on the golf course, that he was not responsible for policing golfers on the golf course, and that it was an issue to be taken up between me and the golfers on the golf course. He also stated to me: 'I knew that as soon as someone built a house there that there would be trouble.' "

Meinig also averred that

"[t]he 15th hole of the Mountain View Golf Club golf course is designed as a 'par 5, dogleg left' hole, approximately 500 yards in length with an approximate 60 degree left turn located at a distance of approximately 200 yards from the regular 15th tee. The design and layout of the 15th hole appears to attract highly skilled golfers to attempt to 'cut the corner' by intentionally attempting to drive golf balls outside the golf course boundary over and across the adjacent respective properties * * * to a 'landing area' located in the upper portion of the 15th fairway, thus shortening the total distance from tee to the 15th green."

Meinig also averred that, in March 2005, in an attempt to prevent golf balls from traveling onto its property, plaintiff built a fence with protective netting 30 feet tall and 200 feet long along a portion of the boundary between the golf course and the property where the vehicles were parked, but that the "fence * * * does not eliminate all of the golf balls that are struck from the 15th tee and fairway, errantly and otherwise, and many golf balls continue to travel outside the boundary of the golf course onto Plaintiff's property each day."

Plaintiff also submitted an affidavit by Keith Jackson, which set out similar facts. In addition, Jackson asserted that,

"[o]n July 22, 2005, an errantly hit golf ball struck from the golf course hit and broke a large window in the dining room of our home. On the following day, I made a telephone call to [defendant] and advised him that a window in our home had been broken by an errantly hit golf ball and asked him what his policy was in regard to such matters. [Defendant] responded by saying that 'it was the responsibility of the one who hit the ball.' I asked him 'how was I supposed to

know who hit the ball?' [Defendant] stated that he would get back to me. As of this date, I have not received any further response from him."

After a hearing on defendant's motion, the trial court ruled:

"With regard to the claims of negligence in the MEC Leasing case, I'm going to grant the defendant's motion for summary judgment there. I think in fact that is consistent with I think the larger body of case law in this more limited area. But nonetheless, the allegations here really seek redress for damage caused either by accident, depending on the particular nature of the conduct involved by the individual golfer, or by negligence of an individual golfer but is not attributable to the golf course operator here. And so I am going to grant the motion for summary judgment[.]"

With the above stated evidence in mind, we turn to the proper standard of review in this case. Summary judgment is appropriate if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47 C.[3] In resolving those issues on appeal, we review the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the party opposing the motion, and we will affirm only if no objectively reasonable factfinder could return a verdict for that party. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997).

Plaintiff argues that it

---

[3] ORCP 47 C provides, in part:

"The court shall enter judgment for the moving party if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial. The adverse party may satisfy the burden of producing evidence with an affidavit or a declaration under section E of this rule. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

"alleged and presented evidence that the Defendant was on notice that golf balls were frequently hit onto property adjacent to the golf course that created a foreseeable risk of property damage or bodily harm, and Defendant took no action to protect against such injury. The fact that the golf balls were hit by third party golfers does not preclude a negligence claim against the golf course operator."

Defendant responds that plaintiff

"failed to produce evidence sufficient to raise a triable issue as to any of the four specifications in the complaint. There is no allegation or evidence in the record that defendant or anyone on his behalf struck any one of these four balls. There is no allegation or evidence in the record that defendant had the right, duty or even ability to control the shots taken by the four unidentified golfers. There is no evidence in the record to demonstrate that the four golfers who struck the 'errant shots' were negligent in taking those shots. Defendant cannot be held liable for the conduct of third parties over whom he has no control, particularly where, as here, there is no indication or evidence that the golfers who struck these 'errant' shots were negligent."

We believe that the focus of defendant's arguments is misplaced. Contrary to defendant's argument, plaintiff does not seek to hold defendant liable for any specified negligence of individual golfers; rather, plaintiff asserts that defendant is liable in negligence for the activities that it conducts on the golf course property, activities that according to plaintiff's allegations have injurious effects beyond the boundaries of the golf course property. It is axiomatic that an actor may be liable for his own negligence even though the injury caused was the result of the combined effects of the actor's negligence and the subsequent conduct of another person.[4] *See, e.g.*, *Becker v. Barbur Blvd. Equipment Rentals, Inc.*, 81 Or App 648, 653, 726 P2d 967 (1986), *adh'd to on recons*, 84 Or App 367, 733 P2d 900, *rev den*, 303 Or 535

---

[4] Defendant argues that there is an insufficient causal link between its activities and the plaintiff's injury, relying on *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 340, 83 P3d 322 (2004). However, according to plaintiff's evidence, its injuries would not have occurred had defendant not permitted golfers to use its property, thereby establishing an inference of direct causation.

(1987). The common-law rule regarding the responsibility of property owners or those who are in control of real property to not injure others through the activities conducted on their land is clear. "[A] party in the exercise of a right upon his own land which involves danger to the property of his neighbor, is bound to provide against such danger by all reasonable prudence and care." *Hummell v. Terrace Co.*, 20 Or 401, 26 P 277 (1891); *see also Gordon Creek Tree Farms v. Layne et al*, 230 Or 204, 221, 358 P2d 1062 (1961), *overruled on other grounds by Fredeen v. Stride*, 269 Or 369, 525 P2d 166 (1974) ("The law permits every person to make use of his property as he will, provided he uses it in such a manner as not to injure others.").[5] Consequently, a landowner may be "liable for harm to protected interests outside the land, caused by negligence on the land." *Hall v. Dotter*, 129 Or App 486, 491, 879 P2d 236 (1994) (citing *Restatement (Second) of Torts* § 364 (1965)).

The above stated rule is well-illustrated by the circumstances in the three cases cited above. In *Hummell*, the defendant built a road with a retaining wall on the property above the plaintiff's orchard, and the defendant was held liable when the wall gave way and damaged the plaintiff's orchard and buildings. The court concluded that the defendant had the duty to take reasonable care and skill in the construction of the wall when it involved any danger or risk to the adjoining property; the court explained:

> "In constructing its wall and roadway the defendant was bound to exercise its right in a way not to expose the plaintiff to any risk which might be provided against by the exercise of ordinary diligence; that this would require of the defendant in the construction of its retaining wall *to anticipate and provide against* such storms or rain-falls as might reasonably be expected to occur."

*Hummel*, 20 Or at 405-06 (emphasis added).

In *Gordon Creek Tree Farms*, the defendant landowners hired loggers to cut timber on their property but failed to identify and inform the loggers of the borders of their land. The Supreme Court held that the defendants could be

---

[5] For example, a landowner may be held liable if a tree on the landowner's property falls onto the roadside and injures someone. *Taylor v. Olsen*, 282 Or 343, 578 P2d 779 (1978).

held liable for damages when the loggers trespassed onto the plaintiff's adjoining property and cut timber there, even if the loggers were deemed independent contractors. It explained:

> "[A]n employer who orders work to be performed from which, in the natural course of things, injurious consequences must be expected to arise unless means are adopted by which such consequences may be prevented, is bound to see that necessary precautions are taken to prevent injury and such person can not by employing some other person relieve himself of his liability to do what is necessary to prevent the work from becoming wrongful."

*Gordon Creek Tree Farms*, 230 Or at 220. The court concluded that the defendants had a duty to determine the exact location of the property borders and to "take the necessary precautions by proper survey to insure against the highly probable damage which would otherwise ensue to the owner of the adjacent property." *Id.* at 222.

In *Hall*, a pedestrian was injured at an intersection between a state road and a county road. The county and the state had agreed that the state was responsible for providing all signs and signals, and therefore the trial court granted the county's motion for summary judgment. We reversed, holding that

> "[a] landowner may be liable for harm to protected interests outside the land, caused by negligence on the land. *See Restatement (Second) of Torts* § 364 (1965). In other words, the county may be liable for harm that occurred on the state road, if the county's 'conduct caused a foreseeable kind of harm to an interest protected against that kind of negligent invasion.' *Donaca v. Curry Co.*, 303 Or 30, 38, 734 P2d 1339 (1987). Plaintiffs alleged that the county was negligent 'in failing to provide pedestrian warning signs,' and that that conduct caused a foreseeable kind of harm, *i.e.*, plaintiff's injury. The county cannot escape liability based on the fact that the harm did not occur on its land."

*Hall*, 129 Or App at 491-92.

Finally, under *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987), unless a plaintiff invokes a "status, a relationship, or a particular standard of conduct that creates, defines, or limits defendant's duty," the

issue of a defendant's liability for a plaintiff's harm "properly depends on whether [his] conduct unreasonably created a foreseeable risk * * * of the kind of harm that befell the plaintiff." As the cases summarized above demonstrate, if a property owner permits the use of his property in a way that causes a foreseeable risk of harm to others, the landowner must take reasonable steps to prevent that harm, whether that harm be to the person, the real property, or the chattels of another.

■ In sum, based on the cases discussed above and the rule of law that they embody, we reject defendant's argument that the evidence offered by plaintiff pursuant to its allegations of negligence against defendant does not make out a legally cognizable claim in negligence. Of course, defendant is correct that he did not hit the golf balls that caused plaintiff's property damage. But, according to plaintiff's evidence, defendant knowingly permitted others to partake in activities on the property that defendant operated that caused damage to plaintiff's property, and defendant was on notice that golf balls frequently were hit onto the properties adjacent to the golf course, thereby causing injury and damage. There is a jury question as to whether it could be inferred from that evidence that the activities permitted by defendant, combined with the actions of the individual golfers who he invited onto the property, operated to create a reasonably foreseeable risk of harm to persons who were using the adjoining lands. Similarly, a jury could find that, after defendant was informed of the risk to others, he did not respond by undertaking reasonable measures to prevent injury. Accordingly, the trial court erred in granting summary judgment to defendant.

Reversed and remanded.