## HARRIS, *Appellant,*

*v.*

## NORTHWEST NATURAL GAS COMPANY, *Respondent.*

### (TC A7603-02985, SC 25240)

588 P2d 18

Leo R. Probst, Portland, argued the cause for appellant. With him on the briefs were Carney, Probst, Levak & Cornelius, Portland.

James H. Clarke, Portland, argued the cause for respondent. With him on the brief were Dezendorf, Spears, Lubersky & Campbell, Wayne Hilliard, and James E. Bartels, Portland.

Before Denecke, Chief Justice, Holman, Tongue, Bryson, Lent and Linde, Justices, and Gillette, Justice Pro Tempore.

LENT, J.

**LENT, J.**

Plaintiff seeks recovery from defendant gas company in strict liability and negligence for personal injuries he suffered when combusting natural gas supplied by the defendant ignited gasoline vapors and thereby caused a fire in plaintiff's garage. Defendant moved to strike plaintiff's complaint in its entirety, claiming that plaintiff had failed to allege facts sufficient to constitute a cause of action either in strict liability or in negligence. The trial court granted defendant's motion and, when plaintiff refused to plead further, dismissed plaintiff's complaint. Plaintiff appeals and we reverse in part.

■ The parties agreed that defendant's motion to strike was to be treated as a general demurrer testing the legal sufficiency of plaintiff's allegations.[1]

Plaintiff alleged in his complaint (1) that defendant began delivery of natural gas to plaintiff's residence in 1973 by lighting the pilot lights of plaintiff's hot water heater and furnace, both of which were located in plaintiff's attached garage, and could reasonably foresee the danger of the flame; (2) that the "gas service" and open burning natural gas[2] were defective

---

[1] It appears to have been so treated by the trial court. We need only comment here that if defendant wished its attack on plaintiff's complaint to be treated as a demurrer, it should have been framed as a demurrer. Although a trial court, independent of statute, has the inherent power to strike pleadings, in whole or in part, *Frangos v. Edmunds,* 179 Or 577, 584, 173 P2d 596 (1946), the grounds for granting a motion to strike should be limited to the statutory grounds given in ORS 16.100(1) and other similar defects in the *manner* of pleading. In *Klerk v. Tektronix, Inc.,* 244 Or 10, 12, 415 P2d 510 (1966), we said:

"* * * Such a motion [to strike] ordinarily does not test the sufficiency of a pleading; its sufficiency must be tested by demurrer. Hubbard v. Olsen-Roe Transfer Co., 110 Or 618, 224 P 636."

However, since plaintiff acquiesced at trial and on appeal to this disfavored practice, we will assume the sufficiency of the complaint is properly before us.

[2] The nature of the "product" which defendant supplied presents one of the initial problems in this case. Plaintiff asserts, and we accept, that the product itself was not just the natural gas which defendant transmitted

and unreasonably dangerous, in that (a) the pilot lights were not shielded from contact with gasoline vapors and other volatile substances which might be present in plaintiff's garage and (b) defendant failed to warn plaintiff of the dangers inherent in this situation;[3] (3) that on June 25, 1974, while plaintiff was in his garage, gasoline vapors in the garage were ignited by the pilot lights and a fire occurred in which plaintiff was injured.

In addition, plaintiff alleges (1) that defendant inspected plaintiff's hot water heater and furnace at the time it commenced service by lighting the pilot lights and (2) that defendant was negligent in one or more of the following particulars: (a) failure to warn of the unreasonable risk inherent in this situation;[4] (b) creation of the unreasonable risk; (c) failure to discover the unreasonable risk;[5] and (d) violation of ORS

through its line to plaintiff's garage and appliances therein. The product is the natural gas as it was ignited in the pilot lights in plaintiff's hot water heater and furnace. However, like the gas in its pre-ignited state, the burning gas in the pilot lights was not, in and of itself, a defective product.

[3] Plaintiff also alleged that the gas service and open burning natural gas were unreasonably dangerous because of defendant's failure to give plaintiff directions and instructions as to how, when and where the pilot lights could be used safely. Though warnings and instructions are not necessarily the same, warnings aiming at avoiding unsafe use of a product and instructions seeking effective use, this allegation is merely another way of alleging a failure to warn. The distinction between instructions and warnings becomes important when instructions alone are given and the issue is whether warnings are also required for safe use.

[4] Defendant asserted that plaintiff's pleadings on the failure to warn, in both negligence and strict liability, were insufficient because plaintiff did not allege that the danger of gasoline vapors igniting with an open flame was not of universal knowledge so that a warning was necessary. This factor of the duty to warn is contained in Restatement Second Torts, Section 388(b), with regard to negligence, Section 402A, Comment j, with regard to strict liability, and is discussed in Prosser on Torts (4th ed 1971) 649-650. As a matter of pleading, however, the allegations of the failure to warn along with the factual circumstances of the injury were sufficient to adequately put defendant on notice as to its alleged duty and breach of that duty, plus that the failure to warn allegedly created an unreasonably dangerous condition.

[5] Plaintiff alleges that defendant was negligent in that it created an unreasonable risk of injury by initiating the open burning of its natural

757-020, which required defendant to furnish adequate and safe gas service.[6]

■ Finally, plaintiff added the allegations that defendant, by its advertising and representations, assumed the duty of making the gas service safe.[7]

gas in a garage when it knew of the likelihood that volatile substances in the garage would be ignited. We do not find from the facts of this case that defendant's initiation of natural gas service alone created such a risk. The only Oregon case used by plaintiff to support his argument is *Ehler v. Portland Gas & Coke Company*, 223 Or 28, 352 P2d 1102 (1960), which involved a *defect* in the installation of service pipes by the defendant and circumstances which sufficed to put the defendant on inquiry notice about the defect. Those circumstances were repeated requests to turn off the gas which defendant thought it had already turned off. Here there was neither an installation or other work defect by the defendant, nor the circumstances to put it on inquiry notice about a defect.

With regard to plaintiff's assertion of negligence by the defendant for failing to inspect for or discover the unreasonable risk, we find that the defendant did not have a duty to inspect where there were not circumstances indicating defects in the pipes or appliances with which it was working. The only case cited by plaintiff for the proposition of a duty to inspect is *Ambriz v. Petrolane, Ltd.,* 49 Cal2d 470, 319 P2d 1 (1958). In that case the California Supreme Court held that a gas company is under a duty to investigate or inspect gas pipes of appliances where it knows there are defects in them.

[6] With regard to this negligence allegation, ORS 757.020 provides simply that "[e]very public utility is required to furnish adequate and safe service, equipment and facilities * * *" Plaintiff does not appear to assert in his complaint that this statute imposes a duty on the defendant independent of the common law duties, the violations of which were alleged in the complaint. In fact, plaintiff does not even mention this statute in his brief and reply brief to this court.

ORS 737.035 empowers the Public Utility Commissioner to promulgate safety regulations for gas companies. Plaintiff refers to no such regulations which defendent has violated.

[7] Plaintiff does not assert that these representations constituted an express warranty which defendant breached. Instead, plaintiff seeks to establish defendant's liability for negligence by asserting that defendant failed to exercise reasonable care in providing a service which it impliedly assumed by making these representations. In support of this theory, plaintiff cites Restatement Second Torts, § 324A, which states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

*Strict Liability.*

Restatement Second Torts, § 402A, as adopted in Oregon by *Heaton v. Ford Motor Co.,* 248 Or 467, 470 435 P2d 806 (1967), and applied in numerous cases since that time, sets out the "Special Liability of Seller of Product for Physical Harm to User or Consumer," commonly known as strict products liability:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

"(2) The rule stated in subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Unreasonably dangerous defects in products come from two principal sources: (1) mismanufacture and (2) faulty design, including failure to warn as a design defect.[8] *Phillips v. Kimwood Machine Co.,* 269 Or 485,

---

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Plaintiff, however, fails to point out how the facts of the present case fit into the structure of this rule. Defendant did not in any way undertake to render services to another within the meaning of this section, and plaintiff has not made such an allegation. Therefore, this section is inapplicable, and these allegations add nothing to plaintiff's case, either for negligence or strict liability.

[8]The failure to warn is unique in strict products liability in its application of the basic principles of § 402A. It is not essential that the product be defective in the sense that it was not properly manufactured. A product may be perfectly manufactured and meet every requirement for its

[ 576 ]

491, n.2, 525 P2d 1033 (1974). Plaintiff here is alleging the second source, arguing first that the gas service and open burning natural gas were defective and unreasonably dangerous because the flame was not insulated from volatile substances and second that the failure to warn made the gas service and open burning natural gas dangerous.

With regard to the first argument, plaintiff concedes that the product involved here is not, in and of itself, defective. It becomes so, according to plaintiff's theory, when used in certain appliances and exposed to outside volatile substances while used in the appliances. The alleged design defect, the exposure of the pilot light flame to volatile substances, exists if at all with the hot water heater and furnace, not with the gas and flame.

█ █ With regard to the second argument, plaintiff's assertion of strict liability for failure to warn in this case goes beyond the limits of applicability of strict liability which this court will recognize. The relationship between the product defendant sold and the situation in which its use may have been "unreasonably dangerous" is too attenuated and remote. While the determination of "unreasonably dangerous" is usually for the jury, the situations in which that determination is to be made is for the court to decide.

Plaintiff relies primarily on two cases to support his right to impose strict liability on the defendant. Neither case is directly on point, but both involve liability for a failure to warn and a certain remoteness between the product actually sold and the reason the failure to warn made the product allegedly unreasonably dangerous.

---

designed utility and still be rendered unreasonably dangerous through failure to warn of its dangerous characteristics. *Jackson v. Coast Paint and Lacquer Company,* 499 F2d 809, 811 (9th Cir 1974), citing *Davis v. Wyeth Laboratories, Inc.,* 399 F2d 121 (9th Cir 1968). It is considered defective when it is sold without a warning. Comment *h*, § 402A.

In *Brizendine v. Visador Company,* 305 F Supp 157 (D Or 1969), aff'd in part 437 F2d 822 (9th Cir 1970), defendant-glass manufacturer produced a pane of glass which had sufficient strength for "normal" uses and sold it to a distributor who, with defendant's knowledge, put it in a "door light" for which the glass was inadequate. Plaintiff, who was injured because of this alleged "defect," sued defendant in negligence and strict liability. The trial court found defendant liable in both counts, predicating defendant's strict liability on its failure to warn in light of its knowledge of the dangerous propensities of the glass in the manner in which it was used. 305 F Supp at 161. The trial court rationalized the imposition of strict liability upon the defendant by saying, at 160:

"* * *We are not faced here with a situation of the plaintiff's injury falling into a small class of uses to which the product might not be safely put, while in the great majority of cases its use would be safe. Rather, this door light equipped with [defendant's glass] was unsafe and unreasonably dangerous, if utilized in any of a substantial number, perhaps even a majority, of its uses."

The present case, where defendant's product, the ignited gas in the pilot lights, would undeniably be safe in a great majority of the cases, is clearly distinguishable. On appeal, the Court of Appeals discussed defendant's liability both for strict liability and for negligence but expressly affirmed "as the only ground" defendant's liability for *negligent* failure to warn. 437 F2d at 829, n.15. In view of the trial court's rationale for imposing strict liability on the defendant, the appellate court's express refusal to affirm that liability and the factual distinctions between the cited case and the present one, the former provides scant support for the latter.

In *Fulbright v. Klamath Gas Co.,* 271 Or 449, 533 P2d 316 (1975), another failure-to-warn case, defendant, a seller of propane gas, provided plaintiff's employer free of charge with a potato vine burner to

promote the sale of propane gas. The burner consisted of pressurized propane tanks and burning units applying an open flame towards the ground. Gas escaping from the safety valves in the propane tanks was ignited by the burner, and the plaintiff was injured. The court found that the design of the burner, the design of the tanks, the particular use of the gas, and defendant's failure to adequately warn were, in combination, the unreasonably dangerous defects supplying the basis for strict liability.

The *Fulbright* court, at 459 chose to analogize the facts of that case both to a bailment situation and to a product/container situation action and to find in their combination sufficient basis to impose strict products liability upon the defendant. The important and obvious distinction between the *Fulbright* case and the present one is that here there was neither bailment nor package. In *Fulbright,* the defendant either manufactured or controlled the distribution of the gas, the tanks, and the burner. In the present case the defendant controlled only the gas and controlled neither the design nor manufacture of the hot water heater or the furnace, the location of these appliances in plaintiff's garage, nor the activities which might take place in the garage. The *Fulbright* decision, by its own recognition, at 459, n.1, was merely "sufficient unto the day," and cannot be used as precedent for imposing strict liability on the defendant in the present case.

### Negligence.

■   Plaintiff contends that defendant was negligent in failing to use due care to provide any warning that the burning of the natural gas could ignite volatile substances in the garage which it knew or should have known created an unreasonable risk of explosion and injury. Defendant's response is that the risk alleged by the plaintiff is so patent and widely known as to foreclose any duty to warn. While defendant emphasizes how obvious it is that a flame will ignite gasoline vapors, plaintiff points out that that is not so

obvious when the flame is in an appliance and gasoline is being handled away from that appliance. We hold that the complaint states facts sufficient to constitute a cause of action in negligence for failure to warn.

Affirmed in part, reversed in part and remanded.